

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| RICKEY DAVIS,[1] | § | |
| | § | |
| Applicant, | § | |
| | § | |
| v. | § | No. 4:18-CV-969-A |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION
### and
### ORDER

Before the court is an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by applicant, Rickey Davis, a state prisoner, against Lorie Davis, director of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ), respondent. After having considered the pleadings and relief sought by applicant, the court has concluded that the application should be dismissed as time-barred.

### I. Factual and Procedural History

On September 18, 2013, in Tarrant County, Texas, Case No. 1295152D, a jury found applicant guilty of aggravated sexual assault of A.P., a child under the age of 14, and assessed his punishment at 99 years' confinement. (Clerk's R. 80, doc. 15-

---

[1] Applicant was convicted and is confined in TDCJ under the name of Ricky D. Davis.

12.[2]) On February 26, 2015, the trial court's judgment of conviction by jury was affirmed on appeal. *Davis v. State,* No. 02-13-00469-CR, 2015 WL 8311951 (Tex. App.—Fort Worth Feb. 26, 2015). The Texas courts' website indicates that applicant filed an untimely petition for discretionary review in the Texas Court of Criminal Appeals. TEXAS JUDICIAL BRANCH, http://www.txcourts.gov. Applicant also sought postconviction state habeas-corpus relief by filing four state habeas-corpus applications challenging his conviction in December 2015, June 2017, October 2017, and March 2018, the latter three of which are relevant to this discussion.[3] (SHR01 2, doc. 15-20; SHR03 2, doc. 15-25; SHR04 2, doc. 15-28; SHR05 2, doc. 15-30.[4]) Applicant filed this federal habeas-corpus application challenging his conviction on October 31, 2018.[5] (Appl. 10, doc. 1.[6]) In one ground for relief, applicant asserts

---

[2]Applicant was also convicted by the jury of trafficking of a person under the age of 18 for prostitution in Case No. 1295144D, but the appellate court reversed the trial court's judgment and rendered a judgment of acquittal in that case. (Op. 2, doc. 15-4.) References to the clerk's record in this opinion are to the clerk's record in Case No. 1295152D.

[3]A pro se prisoner's state habeas application is deemed filed when placed in the prison mailing system. *Richards v. Thaler,* 710 F.3d 573, 578-79 (5th Cir. 2013). Applicant's applications do not provide those dates; thus, the applications are considered filed on the dates they were signed by applicant.

[4]"SHR01," "SHR03," "SHR04," and "SHR05" refer to the court records of applicant's state habeas proceedings in WR-84,643-01, WR-84,643-03, WR-84,643-04, and WR-84,643-05, respectively.

[5]A pro se prisoner's federal habeas petition is also deemed filed when placed in the prison mailing system. *Spotville v. Cain,* 149 F.3d 374, 377 (5th Cir. 1998).

[6]Because there are attachments to the form application, the pagination in the ECF header is used.

that newly discovered evidence proves his actual innocence. (Id. at 6.) Respondent contends that the application is untimely under the federal one-year statute of limitations. (Resp't's Answer 5-7, doc. 16.)

## II. Statute of Limitations

Title 28, United States Code, § 2244(d) imposes a one-year statute of limitations on federal petitions for writs of habeas corpus filed by state prisoners. Section 2244(d) provides:

> (1) A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitations period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitations under this subsection.

28 U.S.C. § 2244(d)(1)-(2).

Applicant's "newly discovered evidence" is a January 24, 2017, affidavit from his niece Latavia Powell. (Appl. 6, doc. 1; SHR03 21, doc. 15-25.) Because the application alleges newly discovered evidence, respondent invokes subsection (D)—"the date on which the factual predicate of the claim . . . presented could have been discovered through the excise of due diligence," as the triggering event for calculating the limitations period. (Resp't's Answer 5, doc. 16.) She asserts that applicant could have learned of the factual predicate for his actual-innocence claim on January 24, 2017, the date the affidavit was signed. Thus, the limitations period commenced on that date and expired one year later on January 24, 2018, absent any tolling. (Resp't's Answer 5, doc. 16.)

Tolling of the limitations period may be appropriate under the statutory tolling provision in § 2244(d)(2) and/or as a matter of equity. Under the statutory provision, applicant's second state habeas application, pending from June 1, 2017, through August 9, 2017, operated to toll limitations 70 days, making his federal application due on or before April 4, 2018. (SHR03 20, doc. 15-25; Action Taken, doc. 15-21.) Applicant's third and fourth state habeas applications, pending from October 28, 2017, through January 31, 2018, and from March 3, 2018, through May 9, 2018, respectively, operated to further toll the

4

limitations period a combined 174 days, making his federal application due on or before September 25, 2018. (SHR04 17, doc. 15-28; Action Taken, doc. 15-26; SHR05 18, doc. 15-30; Action Taken, doc. 15-29.) *See Villegas v. Johnson,* 184 F.3d 467, 473 (5th Cir. 1999) (concluding a properly filed successive state habeas application tolls limitations under § 2244(d)(2)). Therefore, applicant's federal application filed on October 31, 2018, is untimely unless he is entitled to equitable tolling.

To justify equitable tolling, an applicant must show (1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstance stood in his way and prevented him from filing a timely petition or he can make a "convincing showing" that he is actually innocent of the crime for which he was convicted. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013); *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo,* 544 U.S. 408 (2005)). An applicant attempting to overcome the expiration of the statute of limitations by showing actual innocence is required to produce "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"—sufficient to persuade the district court that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin,* 569 U.S. at 386 (quoting *Schlup v. Delo,* 513 U.S. 298, 329 (1995)). The applicant bears the burden to establish that

equitable tolling is justified. *Holland,* 560 U.S. 649.

Toward that end, applicant asserts that the only evidence at trial against him was A.P.'s testimony, supported by the state's DNA evidence. (Appl. 19, doc. 1.) According to applicant, the affidavit from Latavia Powell "unquestionably" proves his innocence because it proves that A.P. fabricated the sexual assault as instructed by her mother and that the DNA could have been that of another male relative with the same Y chromosome. (Id. at 6, 15-16.) Applicant presented the affidavit in his second state habeas proceeding, in which Powell avers (any spelling, grammatical, or punctuation errors are in the original)—

> I am of sound mind and capable of making this sworn statement. I have personal knowledge of the facts written in this statement. I understand that if I lie in this statement I may be held criminally responsible. This statement is true.
>
> On or around February 2016, I spoke to A.P. and we engaged in a casual conversation about miscellaneous female things. However, during that conversation, A.P. revealed to me that she had lied about Rickey Davis sexually assaulting her. She also stated she had been engaging in sexual relation with several people including one of Rickey's relatives for a while before the alleged sexual assault took place. I asked her why she will not tell the truth and she stated that she feared physical repercussion from her mother if she revealed the truth.
>
> I have no further knowledge about the facts relative to this cause and I have no knowledge related to the specific day A.P. said she decided to fabricate this story.
>
> The above state is based on my personal knowledge and

this affidávit affirms this statement.

(SHR03 21, doc. 15-25.)

In response, the state produced an affidavit from A.P. stating (any spelling, grammatical, or punctuation errors are in the original):

> I know La'Tavia Powell. I grew up with her as a kid. I have not talked to her since after trail. We fought cause she did not like the fact I told on her uncle. I never had a conversation with her in January. I don't even like her to talk to her. Everything I said about Ricky Davis was true and also my tetify. This all hurts still to this day. I have never had sex with any of Rickys family. I thought we all was a family till he took my body from me. I have never told LaTavia that I had sex with any other family member but she did tell me she was. I stand by everything in my testomony I spoke at trail.

(SHR03 42, doc. 15-25.)

Based on the affidavits, the documentary record, and his own recollection of the state court proceedings, the state habeas judge adopted the following findings of fact and legal conclusions:

FINDINGS OF FACT

. . .

*Actual Innocence*

5. The victim testified that Applicant sexually assaulted her.

6. A sexual assault kit was taken during the victim's examination.

7. The forensic DNA analyst was able to obtain a full Y chromosomal profile from the semen extracted from the sexual assault kit.

7

8. Applicant's Y chromosome profile was identical to the Y chromosomal profile of the semen.

9. The Y chromosomal profile is passed directly from father to son so every male in that same paternal line will have the same Y chromosomal profile.

10. Applicant denied engaging in sexual intercourse with the victim but stated that she took off her clothes in front of him and propositioned him.

11. Applicant attaches an affidavit from LaTavia Powell alleging that the victim recanted her testimony to her "on or around February 2016."

12. Ms. Powell's affidavit contains no identifying information.

13. There is no evidence as to Ms. Powell's age or location.

14. Ms. Powell is Applicant's niece.

15. The victim and Ms. Powell had a falling out because the victim testified against Applicant.

16. The victim has not spoken with Ms. Powell since after the trial.

17. The victim stands by her testimony at trial.

18. The victim considered Applicant her uncle.

19. The victim considered Applicant's family as her family.

20. The victim did not have sexual intercourse with any of Applicant's family.

21. Ms. Powell's affidavit is not affirmative evidence of innocence.

22. Applicant has not shown, by clear and convincing evidence, that no reasonable juror would have convicted him in light of Ms. Powell's affidavit.

CONCLUSIONS OF LAW

> . . .
>
> *Actual Innocence*
>
> 3. There are two types of actual innocence claims. These two types are the *Herrera*-type, where the applicant argues that some newly discovered evidence proves his innocence, and the *Schlup*-type, where the applicant argues constitutional error at the trial level.
>
> 4. The test for a *Herrera*-type actual innocence claim is whether Applicant has shown "by clear and convincing evidence that no reasonable juror would have convicted him in light of the new evidence."
>
> 5. "[T]he [new] evidence presented must constitute affirmative evidence of the applicant's innocence."
>
> 6. After reviewing all the evidence, this court must assess the witnesses' credibility, examine the "newly discovered evidence," and determine whether the new evidence, when balanced against the "old" inculpatory evidence, unquestionably establishes Applicant's innocence.
>
> 7. Post-conviction claims of a "he said, she said" variety "should not be accepted without close scrutiny nor, generally, without strong corroboration by independent evidence."
>
> 8. In light of all of the evidence, Applicant has failed to "unquestionably" establish that he is actually innocent.
>
> 9. Applicant has failed to meet his burden.
>
> 10. Applicant has failed to prove that he is actually innocent under *Herrera*.

(Id. at 37-40 (citations omitted).)

Clearly, the state judge found A.P.'s affidavit credible and Powell's incredible. Actual innocence requires "evidence of innocence so strong that a court cannot have confidence in the

9

outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *McQuiggin,* 569 U.S. at 401 (citing *Schlup,* 513 U.S. at 316). Deferring to the state court's credibility determination, Powell's affidavit does not constitute trustworthy evidence of innocence so strong that the court cannot have confidence in the outcome of applicant's trial unless the court is also satisfied that the trial was free of nonharmless constitutional error. Applicant does not otherwise assert any valid reasons for his delay or demonstrate rare or exceptionable circumstances that would justify equitable tolling. Thus, applicant is not entitled to equitable tolling.

Accordingly, applicant's federal petition was due on or before September 25, 2018. His application filed on October 31, 2018, is therefore untimely.

For the reasons discussed, it is ORDERED that applicant's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, DISMISSED as time-barred. Applicant has not made a showing that reasonable jurists would question this court's procedural ruling. Therefore, it is further ORDERED that a certificate of appealability be, and is hereby, denied.

SIGNED October 31, 2019.

JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE